[No. 1571.]

GILPIN HESKEW *v.* THE STATE.

1. THEFT—NEWLY DISCOVERED EVIDENCE—NEW TRIAL—FACT CASE.—
See the opinion for the state of proof on which the appellant was con-
victed for the theft of a yearling, and for a showing of newly discovered
evidence which entitled him to a new trial.

2. SAME—MISTAKE.—See the statement of the case for evidence which is held
to have presented the issue of honest mistake.

APPEAL from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

The indictment, filed October 9, 1879, charged the appellant with the theft of an estray yearling, in Gonzales county, on the first day of May, 1879. A term of two years in the penitentiary was the penalty assessed by the verdict of guilty.

The opinion summarizes the evidence which is the basis of the first ruling of the court. The substance of the remaining testimony is as follows:

John Blain testified, for the defense, that he went with the defendant and assisted him to drive up a red and white yearling. It was driven up by direction of the defendant's father. The yearling was found in the rear of Kelly's field. It was in the mark of the defendant's father. The brand on the side was blotched, and the tail was bobbed off. Having driven it to a point near the house, the defendant roped the yearling and tied it to a tree, where the witness left it. The defendant's father at that time exercised no personal care over his stock.

The defendant's brother, W. E. Heskew, testified that shortly before the yearling was killed by the defendant, he, the witness, saw a red and white heifer yearling behind Kelly's field, which

yearling was in his father's mark. The brand was blotched. The witness believed that animal to be his father's, and informed his father of seeing it. The witness was not at home on the day that the defendant killed the animal. The animal had been butchered when the witness returned home. The meat was afterwards consumed by the family, including the defendant. Some time afterwards the defendant took the hide of the animal to Gonzales, and on his return said that he had sold it to Clarke & Rochelle. The yearling was killed some three or four miles from Walker's pasture. The Y brand, and the mark described in the opinion of the court, were given by the defendant's father. That mark was on the yearling the witness saw. That animal was a bob-tailed red and white yearling.

The motion for new trial, presenting the question involved in the opinion, was overruled, and notice of appeal given.

*W. S. Fly,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.     Appellant Heskew was convicted of theft of an estray yearling.

The evidence of the State is, in substance, that there was running, in January, 1879, in the pasture of A. D. Walker, a certain red and white heifer, which stayed in the pasture several months. In May this yearling was missing, and that, two or three weeks after she was missing, her hide was found in the store house of Clarke & Rochelle, in the town of Gonzales. When first seen in the pasture her hair was long, and the yearling was believed to belong to one Korran, but upon a thorough examination the brand was found not to be that of Korran, which was the letters C and H-K, the latter connected by a bar, but to be V-C connected by a bar or a reversed C and V connected by a bar. The mark of the heifer was the same as that given by the father of the defendant, to wit: Crop, split and underbit in both ears. When the hide was discovered and identified in the store house, it was of great importance to ascertain who sold the hide to Clarke & Rochelle. Clarke was introduced by the State, and swore that defendant not only sold the hide thus identified, but gave a bill of sale which described the brand on said hide as being an SQ. The heifer was by some of the witnesses believed to be an estray.

It was in evidence that defendant, about the time the heifer was missing, killed one filling the description of the estray almost literally, except the brand, about which there was controversy. The witnes,s who knew the heifer and identified the hide in the store house, states: "I saw, at the same time this hide was shown me by Clarke, another red and white hide, about the same size and appearance, branded with the Y brand, which is the Heskew brand."

The evidence of the witness Clarke is of the greatest import ance to the prosecution. By it the State proves recent possessior of the fruits of the crime in defendant. This, however, was as chaff compared to the fact established by Clarke's évidence, to wit: A deliberate attempt to evade detection by inserting in the bill of sale, not the true brand, but yet another different one, namely, SQ. Such evidence was amply sufficient to support the charge of theft, so far as the guilty intent is concerned. Not only so, but this evidence would be a very stubborn obstacle in the way of a defense upon the ground of mistake; in fact its effects are of terrible consequence to the defendant in any phase of the case, be his defense what it may.

One ground of the motion for new trial was newly discovered evidence; and in support of this ground the affidavit of this witness Clarke was filed and made a part thereof. The substance of the affidavit of the witness Clarke is, that he was mistaken when he swore that the bill of sale to the hide contained the "SQ" brand, but the truth of this matter was that the "Y" brand was inserted in the bill of sale by the defendant. What a change in this case would have been made if Clarke had sworn this on the trial of the case! The case made by the testimony of Clarke on the trial, and one with that testimony eliminated and that contained in the affidavit inserted, are as wide apart as guilt is from innocence.

The motion for new trial was overruled by the court. This, we think, was evidently erroneous.

Again, the evidence in this case presents the issue of an honest mistake, conceding that defendant did kill the estray heifer. As before observed, a false description of the brand on the hide being shown to have been made by defendant, a vast amount of evidence tending to prove an honest mistake would be required at his hands to sustain such a defense. For, as has been observed, this brand matter most evidently establishes the fradulent intent—proves defendant in heart a thief.

We are of the opinion that the court should have granted defendant a new trial upon the ground of newly discovered evidence. The other questions raised by defendant will not likely arise upon another trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 24, 1883.